Filed 9/13/13  P. v. Greenwood CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E055051 |
| v. | (Super.Ct.No. INF064474) |
| STUART ALDEN GREENWOOD, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  Graham Anderson Cribbs, Judge.  (Retired judge of the Riverside Super. Ct. assigned by the Chief Justice pursuant to art. VI, § 6 of the Cal. Const.)  Affirmed.

Ron Boyer, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Meagan Beale, and William M. Wood, Deputy Attorneys General, for Plaintiff and Respondent.

1

# I

## INTRODUCTION

This case arises out of defendant Stuart Alden Greenwood, a chiropractor, committing sexual crimes against his female patients while leading them to believe he was providing them with chiropractic treatment. Defendant appeals from judgment entered following jury convictions for two counts of foreign object penetration by means of a fraudulent professional purpose (Pen. Code, § 289, subd. (d)(4);[1] counts 1 and 5), three counts of sexual battery by means of a fraudulent professional purpose (§ 243.4, subd. (c); counts 2, 3, 4), and three counts of misdemeanor sexual battery (§ 243.4, subd. (e)(1); counts 6, 7, 8). The trial court sentenced defendant to an aggregate prison term of eight years.

Defendant contends the evidence was insufficient to support his conviction for foreign object penetration by means of a fraudulent professional purpose as to R.S. (count 1) and his conviction for sexual battery by means of a fraudulent professional purpose as to De.L. (count 8). Defendant also contends the trial court erred in giving CALCRIM No. 370 on motive.

Defendant concedes in his appellate reply brief that the evidence was sufficient to support a conviction for count 8. Because defendant has waived the issue, we therefore do not address the contention in this opinion. As to defendant's other contentions, we

---

[1] Unless otherwise noted, all statutory references are to the Penal Code.

conclude there was sufficient evidence as to count 1 and that any instructional error as to motive was harmless. The judgment is affirmed.

II

FACTS

Although defendant was convicted on numerous counts of sexually abusing his patients, only count 1 is being challenged on sufficiency of evidence grounds. We therefore will only briefly summarize the facts as to the other counts.

### Count 1 - Foreign Object Penetration by Means of Fraud, as to R.S.

In January and February 2008, R.S. visited defendant four times for chiropractic treatment of her upper back and right shoulder. Count 1 is based on her fourth and final visit. Count 2 is based on her third visit.

R.S.'s first two visits were unremarkable. During the third appointment, defendant grabbed R.S. around her shoulders from behind and lifted her off the floor. After putting her down, he moved his hands down her front to her vaginal area, where he rubbed her. R.S. was wearing her street clothing. Defendant told her this was part of her treatment.

During R.S.'s last visit on February 7, 2008, she received treatment with electrical pads while lying on a table in her underwear and a gown. After defendant completed this treatment, he rubbed his hands up her left leg to her crotch area and put his finger into her vagina. About three weeks later, when R.S.'s daughter visited her, R.S. told her daughter about the touching and reported the incident to the police. R.S. waited to report the

3

incident to the police because she did not speak English well and wanted to wait for her daughter to help her.

*Other Charged Offenses*

Defendant was charged with committing additional sex crimes by means of fraud, against six other women. Defendant is not challenging the sufficiency of evidence as to these crimes.

**Count 3 -** sexual battery by means of a fraudulent professional purpose (§ 243.4, subd. (c)) - was committed in June 2006, against defendant's 25-year-old office manager, V.P. When V.P. complained of lower back pain, defendant offered to provide her with treatment. During the third treatment, defendant told V.P. he was going to check for a yeast infection and then put his hand under her gown and touched V.P.'s vaginal area. V.P. quit her employment with defendant the next day.

**Count 4** - sexual battery by means of a fraudulent professional purpose (§ 243.4, subd. (c)) - was committed in February 2005, against E.M., who was 60 years old. E.M. visited defendant for treatment of her back and heel pain. During her first visit, defendant put his hand under E.M.'s gown and began touching her, from her upper torso to the top of her legs, including under her breasts and over her pubic bone. While doing so, defendant told E.M. he was detecting infections. E.M. was confused by the touching but did not object because she trusted defendant as a doctor. E.M. saw defendant 14 more times, with the same type of treatment and touching. She finally stopped seeing defendant because the infections never developed, she dreaded the visits, and she felt insulted by the touching.

4

**Count 5 -** foreign object penetration by means of a fraudulent professional purpose; § 289, subd. (d)(4)) - was committed in August 2006, against K.G., who was an RN and hospital administrator. K.G. saw defendant for a painful neurological condition arising from nerve irritation in the pelvis. During her second visit, defendant told K.G. she had a yeast infection that was contributing to her pain. Defendant then proceeded to cover K.G.'s eyes with a cloth and apply ultraviolet light and cream to K.G.'s vaginal area. After removing his fingers from inside K.G.'s vagina, defendant rubbed her genital area. K.G. filed a complaint with the Board of Chiropractic Examiners but did not take any other action because she trusted that a physician would provide proper treatment.

**Count 6 -** misdemeanor sexual battery (§ 243.4, subd. (e)(1)) - was committed in November 2007, against Di.L., who was 26 years old and seeking treatment for lower back pain. During her first visit, defendant felt Di.L.'s lower back and stomach area. He then said, "[M]ay I?" and put his hand sideways between her thighs and moved it to her groin, touching Di.L.'s vaginal area through her jeans. Defendant told Di.L. she had a yeast infection in her left ovary, which he detected from energy flowing from her left ovary. Di.L. told her mother what had happened and the two returned to defendant's office to confront him. Defendant said the examination was routine.

**Count 7 -** misdemeanor sexual battery (§ 243.4, subd. (e)(1)) - was committed in November 2008, against A.D., who was 34 years old and seeking treatment for neck and shoulder pain. Defendant rubbed A.D.'s stomach and told her he needed to check to see if she had a yeast infection. Defendant put his hands between her legs at the knees, moved his hands up to her crotch, and touched her vaginal area outside her clothing.

5

**Count 8 -** misdemeanor sexual battery (§ 243.4, subd. (e)(1)) - was committed in July 2007, against De.L., who was 58 or 59 years old and seeking treatment for her knee. During each of four visits, defendant had De.L. lie on her back and pressed one hand against each side of her hips while holding the palm of his other hand against her pubic bone. He also had her stand while he stood behind her, pressing his body into hers. She felt his groin against her buttocks and twice felt his semi-erect penis against her. Defendant then had De.L. lie on the table again and rubbed his hand from her stomach area up between her breasts to her neck. Defendant told De.L. he was putting her body into alignment. On one occasion, defendant told De.L. he liked his women with a little meat on their bones.

*Uncharged Incident*

During an uncharged incident in September 2006, B.H. visited defendant for treatment for upper back and hip pain. Defendant touched B.H.'s groin and pubic bone. He told her he was doing a gynecological exam and that B.H. had a yeast infection.

*Expert Testimony*

Dr. Wayne Whalen testified as an expert in chiropractic practice. Whalen testified that yeast infections are not detectible by touch and he would not put his hand on a patient's stomach or crotch, even if he suspected a yeast infection. Under chiropractic standards, a chaperone should be present when a chiropractor is dealing with private areas on a patient of the opposite sex, and patient consent should be provided before touching a patient's private areas. Whalen testified that he would not have committed defendant's alleged acts, and such acts were "way beyond what chiropractors do."

6

## III

## SUFFICIENCY OF EVIDENCE AS TO COUNT 1

Defendant contends there was insufficient evidence to support his conviction for foreign object penetration by means of a fraudulent professional purpose (§ 289, subd. (d)(4)).  Specifically, defendant argues the evidence established that R.S. was conscious of the nature of the act committed by defendant.

Section 289, subdivision (d)(4), provides:  "Any person who commits an act of sexual penetration, and the victim is at the time *unconscious of the nature of the act* and this is known to the person committing the act or causing the act to be committed, shall be punished by imprisonment in the state prison for three, six, or eight years.  As used in this subdivision, '*unconscious of the nature of the act' means incapable of resisting because the victim* meets one of the following conditions:  [¶] . . . [¶]  (4) *Was not aware, knowing, perceiving, or cognizant of the essential characteristics of the act due to the perpetrator's fraudulent representation that the sexual penetration served a professional purpose* when it served no professional purpose."  (Italics added.)

"Sexual penetration," within the meaning of section 289, subdivision (k)(1), is defined as "the act of causing the penetration, however slight, of the genital or anal opening of any person or causing another person to so penetrate the defendant's or another person's genital or anal opening for the purpose of sexual arousal, gratification, or abuse by any foreign object, substance, instrument, or device, or by any unknown object."

7

Defendant assumes for purpose of this appeal, that the penetration alleged in count 1 was for the purpose of sexual arousal, gratification, or abuse. However, he argues there was insufficient evidence that R.S. was unaware of the essential characteristics of the act. Defendant also argues there was insufficient evidence establishing R.S. permitted the penetration based on fraudulent representation by defendant that the unlawful touching and penetration served a professional purpose. We conclude there was more than sufficient evidence of these elements of unconsciousness and fraud. R.S. testified she visited defendant for the purpose of receiving chiropractic treatment for her upper back and right shoulder. Defendant led her to believe that he was providing appropriate treatment for her ailments. During the third appointment, defendant groped and fondled the front of her body and vaginal area. When R.S. asked defendant why he touched her that way, he told her it was part of her treatment. R.S. testified that, at that time, she did not think defendant had acted inappropriately and did not realize he was sexually abusing her. She did not know what was going on. She thought the incident was strange but did not think anything bad had happened. This is why she returned for the fourth treatment, which is the basis of count 1.

During R.S.'s fourth and final visit, defendant stood in front of R.S., facing her while she was standing, and told her he was going to transfer excess energy on the right side of her body to her left side. Defendant kneeled in front of R.S. and began rubbing his hands up her left leg to her crotch area. He then put his finger under her underwear and into her vagina. Although R.S. testified she was shocked, she did not know what to do at that time and did not understand why it had happened to her. When R.S. said,

8

"[W]hat is this?," defendant replied, "Next time I will use the glove," indicating his conduct was part of routine chiropractic treatment. This evidence was more than sufficient to establish R.S. was unaware that defendant was sexually abusing her and that defendant had fraudulently led her to believe that he was providing her with appropriate chiropractic treatment.

R.S.'s testimony demonstrated that she was unaware that defendant was inappropriately touching her until afterwards. She allowed defendant to touch her because she believed defendant's representations that his acts were in furtherance of providing necessary chiropractic treatment. A finding of unconsciousness, within the meaning of section 289, does not require physical unconsciousness. It "simply requires proof the defendant tricked the victim into submitting to the touching on the pretext it served a professional purpose." (*People v. Pham* (2009) 180 Cal.App.4th 919, 928.) The unconsciousness requirement will be satisfied "[s]o long as the victim was unaware of the 'essential characteristics of the act,' i.e., the sexual nature of the act itself." (*Ibid.*) Here, defendant's conduct and representations created the false impression his actions were for the purpose of chiropractic treatment and not of a sexual nature.

IV

INSTRUCTIONAL ERROR

Defendant contends he was denied due process when the trial court gave CALCRIM No. 370, instructing the jury that proof of motive was not required, whereas motive was central to the charged sexual crimes. Defendant argues the instruction conflicted with instructions on the elements of the charged crimes, in which the jury was

9

told that it must find that defendant's acts were committed with the purpose of sexual arousal, sexual gratification or sexual abuse.

During a discussion of the jury instructions, defense counsel objected to the trial court giving CALCRIM No. 370 on motive. Defense counsel argued that motive for committing the charged crimes was the same as the specific intent required to prove defendant was guilty of the crimes. Therefore CALCRIM No. 370 on motive would be duplicative and confuse the jury as to motive and specific intent.

CALCRIM No. 370, as read to the jury, states: "The People are not required to prove that the defendant had a motive to commit any of the crimes charged. In reaching your verdict you may, however, consider whether the defendant did, in fact, have a motive. [¶] Having a motive may be a factor tending to show that the defendant is guilty. Not having a motive may be a factor tending to show that the defendant is not guilty." The Bench Notes on CALCRIM No. 370 state: "**Do not** give this instruction if motive is an element of the crime charged."

Defense counsel suggested that if the court gave CALCRIM No. 370, the following language should be added to the instruction to eliminate confusion by CALCRIM No. 370, stating a finding of motive was not required, and the instructions on the elements of the sex crimes, which required a finding of sexual purpose or intent: "'Independent of motive, the People must still prove beyond a reasonable doubt the specific intent required for a conviction of each crime contained in the Information.'" The prosecutor responded that according to case law, such as *People v. Hillhouse* (2002) 27 Cal.4th 469, 503-504 (*Hillhouse*), motive, intent and malice are separate and distinct

mental states. Therefore giving instruction on motive does not conflict with the instructions on intent and malice. The trial court agreed and gave CALCRIM No. 370.

Defendant argues *Hillhouse, supra,* 27 Cal.4th 469, is distinguishable. In *Hillhouse*, the defendant was convicted of first degree murder, robbery, and kidnapping for robbery. The trial court instructed on the mental states required for the various charges, including that murder required malice or a killing during the commission of robbery, that robbery required the specific intent permanently to deprive the victim of property, that the force or intimidation required for robbery must be motivated by the intent to steal, and that kidnapping for robbery required the purpose and specific intent to commit robbery. The court also instructed, in accordance with CALJIC No. 2.51, which is similar to CALCRIM No. 370,[2] that "'[m]otive is not an element of the crime charged and need not be shown.'" The defendant argued that telling the jury that motive was not an element of the crimes contradicted the other instructions, because motive was an element of the various crimes. The *Hillhouse* court held that the trial court did not err in giving CALJIC No. 2.51, since motive was not an element of the crimes. (*Hillhouse, supra,* 27 Cal.4th at pp. 503-504.)

The court in *Hillhouse* explained that, "'Motive, intent, and malice . . . are separate and disparate mental states. The words are not synonyms. . . .' Motive describes the reason a person chooses to commit a crime. The reason, however, is different from a

---

[2] CALJIC 2.51 states: "Motive is not an element of the crime charged and need not be shown. However, you may consider motive or lack of motive as a circumstance in this case. Presence of motive may tend to establish the defendant is guilty. Absence of motive may tend to show the defendant is not guilty."

11

required mental state such as intent or malice." (*Hillhouse, supra,* 27 Cal.4th at p. 504.) The *Hillhouse* court distinguished *People v. Maurer* (1995) 32 Cal.App.4th 1121, a child sexual abuse case (§ 647.6), in which the court found prejudicial error in giving CALJIC No. 2.51 because motive was an element of the charged offense. The trial court in *Maurer* instructed the jury on the elements of a section 647.6 offense as follows: "'Every person who annoys or molests any child under the age of 18 years is guilty of a misdemeanor. [¶] 'In order to prove such crime, each of the following elements must be proved: [¶] '1. That a person engaged in acts or conduct, directed at a child under the age of 18, which would unhesitatingly disturb or irritate a normal person, if directed at such person, and [¶] '2. *Such acts or conduct were motivated by an unnatural or abnormal sexual interest* in [K.V.] [¶] 'It is not necessary that the acts or conduct actually disturb or irritate the child, or that the body of the child be actually touched.'" (*Maurer,* at p. 1125; italics added.)

The *Maurer* court found that, although motive is not generally an element of a criminal offense, motive was an element of the sexual crime of violating section 647.6. (*People v. Maurer*, *supra*, 32 Cal.App.4th at pp. 1126-1127.) The *Maurer* court therefore concluded CALJIC No. 2.51 and the instruction on the elements of a section 647.6 crime were contradictory and thus erroneous, since CALJIC No. 2.51 said motive was not required and the other instructions on the crime elements said motive was required. (*Ibid.*)

Here, sexual purpose is an element of the charged sexual crimes. As in *Maurer*, the crimes require findings of sexual interest when committing the crimes. The trial court

12

instructed the jury that as to each of the sexual crimes (foreign object penetration by means of a fraudulent professional purpose (§ 289, subd. (d)(4)), sexual battery by means of a fraudulent professional purpose (§ 243.4, subd. (c)), and misdemeanor sexual battery (§ 243.4, subd. (e)(1)), the jury was instructed that it must find defendant committed the crimes by committing sexual penetration or touching an intimate part of the victim's body, "for the specific purpose of sexual arousal, sexual gratification, or sexual abuse."

Because sexual purpose is an element of the charged crimes in the instant case, the trial court erred in giving CALCRIM No. 370 on motive. Nevertheless, such error was harmless under *Chapman v. California* (1967) 386 U.S. 18, 24. The trial court instructed the jury that each of the crimes required a finding that defendant committed the crimes "for the specific purpose of sexual arousal, sexual gratification, or sexual abuse." The jury was also instructed that each of the crimes required proof of the union of the prohibited act with the required specific intent or mental state. "An instruction that omits a required definition of or misdescribes an element of an offense is harmless only if 'it appears "beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained."' [Citation.]" (*People v. Mayfield* (1997) 14 Cal.4th 668, 774.) Unlike in *Maurer*, there was not as clear a conflict between the instruction stating motive was not required (CALCRIM No. 370) and the instructions on the crime elements, because in the instant case the instructions on the crime elements referred to the need for a finding of sexual "purpose," rather than "motive." But even assuming the two terms are synonymous, it is not reasonably probable that giving CALCRIM No. 370 contributed to the verdict obtained.

13

Defendant argues that CALCRIM No. 370 misinformed the jury that it was not required to find motive and therefore could have convicted him without the required finding of sexual purpose for the physical acts.  But no reasonable juror would have construed the instructions as a whole in such a way, particularly since the jury was instructed that convictions for the charged offenses required findings defendant acted with sexual purpose, and the prosecutor argued that the evidence showed defendant acted with the motive of sexually assaulting his victims.  There is no reason to believe that the jury did not follow the instructions requiring a finding of sexual purpose as to each crime, even though it was also told it did not have to find motive.  Juries are presumed to follow the instructions given, and therefore it can be presumed the jury found defendant acted with sexual purpose, particularly since there was overwhelming evidence of this.  (*People v. Van Winkle* (1999) 75 Cal.App.4th 133, 148.)

We conclude any error in giving CALCRIM No. 370 was harmless.

V

DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

CODRINGTON

J.

We concur:

RAMIREZ

P. J.


HOLLENHORST

J.

14